*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1320**

State of Minnesota,
Respondent,

vs.

Adam Alan Penhollow,
Appellant.

**Filed July 6, 2026
Affirmed
Larkin, Judge**

Freeborn County District Court
File No. 24-CR-24-1101

Keith Ellison, Attorney General, Lydia Villalva Lijo, Assistant Attorney General, St. Paul, Minnesota; and

David Walker, Freeborn County Attorney, Albert Lea, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his conviction for fleeing a peace officer in a motor vehicle, arguing that the district court erred by denying his motion to suppress the evidence against

him. He also argues that the evidence was insufficient to support the jury's guilty verdict. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Adam Alan Penhollow with the following offenses: (1) fleeing a peace officer in a motor vehicle, (2) fifth-degree possession of a controlled substance, (3) possession of an explosive device, (4) unlawful possession of a suppressor, (5) refusal to submit to a chemical test, (6) possession of ammunition or a firearm by an ineligible person, and (7) driving after revocation.

The police arrested Penhollow because he failed to stop when the police attempted to pull him over for driving after revocation of his driving privileges. An inventory search of the vehicle Penhollow was driving revealed a baggy containing white residue. Police suspected that Penhollow was driving while impaired and obtained a warrant for a sample of his blood or urine for chemical testing. Penhollow refused to provide a sample. Police also obtained a warrant to search a safe that was in the vehicle. Inside, police discovered a substance that tested positive for methamphetamine and a pipe bomb. Finally, police obtained a warrant to search Penhollow's residence and found firearms, ammunition, and a firearm sound suppressor in the home.

Penhollow moved to suppress all evidence obtained as a result of his seizure and to dismiss the charges against him. The district court held a hearing on the motion. The district court found that, on July 5, 2024, officers were on patrol and observed a confrontation outside of a Walmart store. A male, later identified as Penhollow, walked

away from the confrontation, entered a vehicle, and drove away. An officer ran the vehicle's license-plate number and learned that the vehicle belonged to Penhollow's wife.

The officer had previously interacted with Penhollow in a law-enforcement capacity. Although the officer did not recognize Penhollow when the officer saw him at Walmart, the officer testified that the male's appearance was not inconsistent with Penhollow's. The officer explained that when he saw Penhollow outside of Walmart, Penhollow looked "a little rougher" and in "worse condition" than when the officer previously had contact with him.

Because Penhollow was traveling in the direction of the Penhollow residence and driving a vehicle belonging to Penhollow's wife, the officer suspected that Penhollow was driving the vehicle. The officer confirmed that Penhollow's driving privileges were revoked and then initiated a traffic stop. Penhollow did not immediately stop his vehicle despite the officer's use of his squad car's emergency lights and siren.

The district court granted in part and denied in part Penhollow's suppression motion. The district court suppressed certain statements that Penhollow made to the police, but the court denied his motion to suppress the other evidence.

Penhollow pleaded guilty to driving after revocation, and a jury later found him guilty of the remaining six charges.

Penhollow appeals.

3

# DECISION

## I.

Penhollow contends that the district court erred by denying his motion to suppress all of the evidence obtained subsequent to and as a result of his traffic stop, arguing that the stop was unconstitutional.

Evidence seized in violation of the U.S. or Minnesota Constitution must be suppressed. *Terry v. Ohio*, 392 U.S. 1, 12-13 (1968); *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011). The Fourth Amendment of the U.S. Constitution and article I, section 10, of the Minnesota Constitution protect "against unreasonable searches and seizures." Warrantless searches and seizures are per se unreasonable unless they fall under an established exception. *State v. Othoudt*, 482 N.W.2d 218, 221-22 (Minn. 1992); *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992). "The State bears the burden of establishing that the challenged evidence was obtained in accordance with the constitution." *State v. Edstrom*, 916 N.W.2d 512, 517 (Minn. 2018).

Police may temporarily detain an individual based on reasonable, articulable suspicion that the individual is engaged in criminal activity. *Diede*, 795 N.W.2d at 842-43. A reasonable, articulable suspicion exists if the police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. The reasonable-suspicion standard is not high, but the suspicion must be more than a "mere hunch." *State v. Taylor*, 965 N.W.2d 747, 752 (Minn. 2021) (quotation omitted). "Ordinarily, if an officer observes

4

a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's factual findings for clear error and its legal determinations de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). In reviewing the district court's factual findings, we defer to the district court's credibility determinations. *State v. Jones*, 566 N.W.2d 317, 325 (Minn. 1997); *State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003), *rev. denied* (Minn. July 15, 2003).

The parties agree that the officer "seized" Penhollow when the officer activated his squad car's emergency lights while following Penhollow. Penhollow argues that the officer did not have reasonable, articulable suspicion of criminal activity at that time.

The stop was based on the following circumstances, as found by the district court. A police officer observed Penhollow enter a vehicle at the Walmart store and then determined that the vehicle belonged to Penhollow's wife. The officer had previously interacted with Penhollow, but the officer did not recognize him at Walmart because he looked "rougher" than he had in the past. However, the officer did not notice any physical inconsistencies that ruled out the possibility that the person he saw at Walmart was Penhollow. The officer followed the vehicle and it headed towards the Penhollow residence. The officer therefore suspected that Penhollow was driving the vehicle. Finally, the officer confirmed that Penhollow's driving privileges were revoked.

In *State v. Pike*, the supreme court held that an officer may lawfully stop a vehicle "if the officer knows that the owner of the vehicle has a revoked license, so long as the officer remains unaware of any facts which would render unreasonable an assumption that the owner is driving the vehicle." 551 N.W.2d 919, 920 (Minn. 1996). The district court relied on *Pike* for the proposition that an officer may make rational inferences about the driver of a vehicle, and concluded that, in this case, the officer rationally inferred that Penhollow was the driver, in part because "spouses often share much of their property."

"In determining whether the reasonable suspicion standard is met, we consider the totality of the circumstances," and we apply a common-sense approach. *Taylor*, 965 N.W.2d at 752. Officers may draw reasonable inferences from the facts available. *Id.* at 752-53. Because the officer here knew that the vehicle was registered to Penhollow's wife, a male was driving the vehicle, the male's appearance was not inconsistent with Penhollow's, and the vehicle was traveling towards the Penhollow residence, it was not unreasonable for the officer to infer that Penhollow was driving. Instead, the officer's reasoning was consistent with common sense.

Penhollow's reliance on a nonprecedential opinion of this court, *State v. Smith*, does not persuade us otherwise. No. A07-2426, 2008 WL 2967063 (Minn. App. Aug. 5, 2008). "Nonprecedential opinions . . . are not binding authority . . . but . . . may be cited as persuasive authority." Minn. R. Civ. App. P. 136.01(c).

In *Smith*, we addressed "whether an officer may reasonably conclude that a relative of the registered owner of a vehicle, who has the same registered address as the registered owner, is the driver of the vehicle." 2008 WL 2967063, at *5. The officer in *Smith* went

6

to a residence to execute a warrant for Rick Smith's arrest. *Id.* at *1. The officer "observed a vehicle being operated near the listed address and ran the license plate number." *Id.* The registered owner was James Smith, "who had the same last name and registered address as Rick Smith." *Id.* Based on what he could see of the driver's hair, the officer suspected that the driver was male, and because the vehicle was registered to someone with the same last name and address and was driven by a male, the officer concluded that the driver of the vehicle could be Rick Smith and stopped the vehicle. *Id.* We concluded that the officer's observations were constitutionally insufficient to justify the stop, primarily because the officer "had no indication of the driver's age range or any other features that could reasonably identify him" as Rick Smith. *Id.* at *6.

This case is distinguishable from *Smith* because the officer here learned that the vehicle belonged to Penhollow's wife, the officer had previously interacted with Penhollow, the officer observed the vehicle's driver enter the vehicle at Walmart, the driver's appearance was not inconsistent with Penhollow's, and the officer observed the vehicle travel in the direction of Penhollow's residence. And as the district court reasoned, "[i]t is a matter of common sense and common knowledge that spouses often share much of their property, including vehicles." The confirmed spousal relationship in this case more readily supports a suspicion regarding the identity of the driver than the undefined relationship in *Smith*. As the state argues, the articulated suspicion in this case "was based on more than [Penhollow] sharing the same last name and residence" with the vehicle's registered owner. For these reasons, our nonprecedential decision in *Smith* is not persuasive.

In sum, "[t]he factual basis required to support an investigatory stop is minimal." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005) (citing *State v. McKinley*, 232 N.W.2d 906, 909 (Minn. 1975)). It requires "a showing that the seizure was not the product of mere whim, caprice, or idle curiosity." *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012) (quotation omitted). The officer's articulated basis for the traffic stop in this case meets that standard. The district court therefore did not err by concluding that the seizure was lawful and denying Penhollow's motion to suppress.

## II.

Penhollow contends that the evidence was insufficient to support the jury's guilty verdict on his fleeing charge.

When considering a challenge to the sufficiency of the evidence, we "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). We view the evidence in the light most favorable to the verdict and assume that the fact-finder disbelieved any evidence contrary to the verdict. *Id.* We defer to the jury's credibility determinations and will not reweigh the evidence on appeal. *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009); *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002). We will not disturb a guilty verdict if the jury, acting with due regard for the presumption of innocence and requirement of proof beyond a reasonable doubt, could reasonably have concluded that the state proved the defendant's guilt. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

But if the state relied on circumstantial evidence to prove an element of an offense, we apply a heightened standard of review. *See State v. Harris*, 895 N.W.2d 592, 601-03 (Minn. 2017) (applying circumstantial-evidence standard to individual element of criminal offense that was proved by circumstantial evidence). Circumstantial evidence is "evidence from which the [fact-finder] can infer whether the facts in dispute existed or did not exist." *Id.* at 599 (quotation omitted). "A state of mind generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000).

Penhollow was charged and convicted of fleeing under Minn. Stat. § 609.487, subd. 3 (2022), which criminalizes fleeing or attempting to flee a peace officer "who is acting in the lawful discharge of an official duty" if "the perpetrator knows or should reasonably know the same to be a peace officer."

The term "flee" is defined by statute as "to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle." *Id.*, subd. 1 (2022). The term "elude" is not defined by statute. If a statutory term is not defined in statute, "we give that word or phrase its plain and ordinary meaning" by applying dictionary definitions of the term. *State v. Prigge*, 907 N.W.2d 635, 638 (Minn. 2018) (quotation omitted). Dictionaries define "elude" as "to avoid or escape," *see* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 47 (3d ed. 2011) (defining "elude"), or "[t]o evade or escape from," *see The American Heritage Dictionary of the English Language* 581 (5th ed. 2018) (defining "elude"). *See State v. Klaysmat*, No. A23-

9

1437, 2024 WL 3321008, at *3 (Minn. App. July 8, 2024) (citing those dictionary definitions when considering whether evidence was sufficient to support a conviction of fleeing); *see also* Minn. R. Civ. App. P. 136.01(c) (allowing citation of nonprecedential opinions as persuasive authority).

Penhollow asserts that the state failed to prove his "specific intent to elude a peace officer." Because proof of Penhollow's state of mind was circumstantial, we apply the heightened standard of review.

The Minnesota Supreme Court recently reiterated the "long-standing two-step circumstantial-evidence test." *State v. Firkus*, 31 N.W.3d 468, 473 (Minn. 2026). Under that test, we first "winnow down the evidence presented at trial by resolving all questions of fact in favor of the jury's verdict, which results in a subset of facts that constitute the circumstances proved." *Id.* at 478 (quotations omitted). Next, "we consider whether the reasonable inferences that can be drawn from the circumstances proved, when viewed as a whole and not as discrete, isolated facts, are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *Id.* (quotations omitted). "During the second step, we do not defer to the factfinder but examine the reasonableness of the inferences ourselves." *Id.* at 483 (quotation omitted).

"If the circumstances proved when viewed as a whole, support a reasonable inference that is inconsistent with guilt, the evidence is not sufficient to support the conviction, and we must reverse." *Id.* (quotations omitted). But appellate courts "will not reverse a conviction based on mere conjecture" or "speculation." *Id.* (quotation omitted); *State v. Al-Naseer*, 788 N.W.2d 469, 480 (Minn. 2010).

10

The circumstances proved here are as follows:

- An officer saw a man—later identified as Penhollow—enter a vehicle in a Walmart parking lot.
- The officer, who was in his squad car in the parking lot, learned that the vehicle was registered to Penhollow's wife and that Penhollow's driving privileges were revoked.
- Penhollow drove out of the parking lot, followed by the officer.
- Penhollow turned onto Hammer Road, a two-lane highway with a 55 mile-per-hour speed limit, and the officer turned on his squad-car lights, in an effort to initiate a traffic stop.
- After Penhollow completed the turn, the pursuing officer turned on his squad-car's siren.
- The officer saw that there was a dark, plastic covering where the rear window of the vehicle should have been, and the officer wanted to be absolutely sure that the driver was aware that the officer was behind him.
- Penhollow accelerated to 55 miles per hour.
- There were areas where Penhollow's vehicle could have stopped.
- Penhollow was waving his arms out the window of his vehicle, but he did not slow down.
- The officer did not understand the meaning of Penhollow's arm waving.
- A second officer was driving toward Penhollow and the first officer on Hammer Road.
- The second officer activated the emergency lights on his squad car as he approached Penhollow.
- After the second officer passed Penhollow and the first officer, the second officer made a U-turn on Hammer Road and joined the first officer's pursuit of Penhollow with his squad car's emergency lights activated.
- Penhollow's vehicle turned left.
- The first officer addressed Penhollow over the squad car's PA and told him to "pull it over" a couple times.
- Penhollow turned right into a subdivision and stopped.
- The officer's pursuit of Penhollow spanned a distance of approximately 0.66 miles.
- The pursuit lasted approximately one minute.

Viewed as a whole, these circumstances show that Penhollow knew officers were attempting to stop his vehicle, that he increased his speed and refused to stop despite having

11

the ability to do so, and that he intended to elude the officers. Thus, the circumstances support a reasonable inference of guilt.

Penhollow argues that the circumstances also support a reasonable hypothesis that is inconsistent with guilt specifically, that Penhollow did not intend to elude the officers but rather intended to "facilitate" the officers' "ability to observe and follow him, and to stop and speak with [the officers] as soon as it was safe to do so."

A rational hypothesis of innocence cannot be based on mere speculation or conjecture—it must be supported by evidence in the record. *Al-Naseer*, 788 N.W.2d at 480; *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). Penhollow's hypothesis is inconsistent with the circumstances proved, which show that he had opportunities to pull over in a safe area but did not do so. Because Penhollow's hypothesis of innocence is not supported by the record, it is not reasonable.

In sum, because the circumstances proved, when viewed as a whole, do not support a reasonable inference that is inconsistent with guilt, we do not disturb the guilty verdict underlying Penhollow's fleeing conviction.[1]

**Affirmed.**

---

[1] Penhollow also argues that if the police unlawfully seized him, then the state necessarily failed to prove that the officers were "acting in the lawful discharge of an official duty," which is an element of fleeing. Minn. Stat. § 609.487, subd. 3. Our conclusion that the traffic stop was lawful forecloses this argument.